1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| EAT RIGHT FOODS, LTD, | ) | CASE NO. C13-2174RSM |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER ON CROSS-MOTIONS FOR |
| v. | ) | SUMMARY JUDGMENT |
| | ) | |
| WHOLE FOODS MARKET, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.     INTRODUCTION

This matter comes before the Court on the remaining parties' Cross-Motions for Summary Judgment.  Dkts. #90 and #96.  Defendants, Whole Foods Market Services, Inc. ("WFMI") and Whole Foods Market Pacific Northwest, Inc. ("WFMPNW"), argue that they are entitled to summary judgment on all claims on their affirmative defenses of laches and acquiescence.  Dkt. #90.  Plaintiff, Eat Right Foods, Ltd. ("ERF"), responds (and cross-moves) that it is entitled to summary judgment in its favor because the evidence does not support either defense in this case.  Dkt. #96.  For the reasons set forth below, and having determined that oral argument is not necessary on these motions, this Court disagrees with Plaintiff, GRANTS Defendants' motion for summary judgment and DENIES Plaintiff's motion for summary judgment.

ORDER
PAGE - 1

## II.     BACKGROUND

This matter arises from allegations of trademark infringement, false designation of origin and unfair competition.  Dkt. #16 at ¶ ¶ 34-43.  Plaintiff alleges that it has used the trademark "EAT RIGHT" since 2001 and the trademark "EATRIGHT" since 2003.  *Id.* at ¶ 19. Plaintiff further alleges that from 2004 to 2013, Defendants sold products produced by Plaintiff and sold under the trademark "EATRIGHT."  *Id.* at ¶ 30.  Plaintiff alleges that Defendants have since sold and marketed products using a trademark confusingly similar to "EATRIGHT" without authorization by Plaintiff, in violation of federal trademark laws and Washington's Consumer Protection Act.  *Id.* at ¶ ¶ 32-43.

Defendants have raised an affirmative defense that Plaintiff's claims are barred by the doctrines of laches and acquiescence.  Dkt. #23, Affirmative Defenses at ¶ 1.  The instant motions address the affirmative defense only.

## III.     DISCUSSION

### A.  Legal Standard on Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).   In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).  Material facts are those which might affect the outcome of the suit under governing law.  *Anderson,* 477 U.S. at 248.  A factual dispute is "genuine" if the evidence is such that reasonable persons could disagree about whether the facts claimed by the

ORDER
PAGE - 2

moving party are true.  *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983).  [T]he issue of material fact required . . . to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.  *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968).

The Court must draw all reasonable inferences in favor of the non-moving party.  *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 251.

While the parties do dispute some facts, they agree that the instant issues are appropriate for disposition on their cross-motions.  However, cross motions for summary judgment do not warrant the conclusion that one of the motions must be granted.  The Court must still determine whether summary judgment for either party is appropriate.  *See Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136-1137 (9th Cir. 2001).

**B.  Laches**

The Court first turns to Defendants' argument that Plaintiff's claims are barred by the doctrine of laches.  "Laches is an equitable time limitation on a party's right to bring suit."

ORDER
PAGE - 3

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002).  To prevail on

a laches defense, a defendant must prove that the claimant unreasonably delayed in filing suit,

and as a result of the delay, the defendant suffered prejudice.  *Id.*; *adidas America, Inc. v.*

*Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1069 (D. Or. 2008).  In determining whether a

party exercised unreasonable delay in filing suit, the Court must assess the length of delay,

which is measured from the time the plaintiff knew, or in the exercise of reasonable diligence,

should have known about its potential cause of action, and the Court must consider whether the

plaintiff's delay was reasonable in light of the time allotted by the analogous state law

limitations period.  *See Jarrow,* 304 F.3d at 838.  "If the plaintiff filed suit within the analogous

limitations period, the strong presumption is that laches is inapplicable."  *Id.* at 835.  "However,

if suit is filed outside of the analogous limitations period, courts often have presumed that

laches is applicable."  *Id.*  The Ninth Circuit has found that District Courts may properly grant

summary judgment on the basis of laches.  *American Int'l Group, Inc. v. American Int'l Bank*,

926 F.2d 829, 831 (9th Cir. 1991) (citation omitted).

      *1.  Length of Delay*

      In this case, the parties appear to agree that the most closely analogous state-law

limitations period for Plaintiff's trademark infringement and false designation claims is

Washington's common law tort of trade name infringement, which has a three-year limitations

period.  Dkts. #90 at 15 (citing RCW 4.16.080(2)) and #96 at 12-14 (analyzing three-year time

period); *see also Oldcaste Precast, Inc. v. Granite Precasting & Concrete, Inc.*, 2011 U.S. Dist.

LEXIS 20977, *10 (W.D. Wash. Mar. 2, 2011) ("The Lanham Act has no express statute of

limitations.  The Court therefore looks to the limitations of the closest analogous limitation

from state law.  The closest analogous cause of action in state law is Washington's common

law tort of trade name infringement."); *Ormsby v. Barrett*, 2008 U.S. Dist. LEXIS 20, *6-7 (W.D. Wash. Jan. 2, 2008) (utilizing three year limitations period).  Defendants argue that Plaintiff should have known of the alleged infringement as early as 2009, but actually had knowledge of the alleged infringement in February or March of 2010, and yet did not file suit until December 3, 2013, outside of the three-year limitations period.  Dkt. #90 at 15.  Plaintiff responds that it did not have actual or constructive knowledge of the alleged infringement until February or March of 2011, and therefore filed its suit within the three year limitations period.  For the reasons discussed below, the record demonstrates actual or constructive knowledge of the alleged infringement in early 2010.

Plaintiff alleges that it began using its trademark "EAT RIGHT" in 2001 and the trademark "EATRIGHT" in 2003.  Dkt. #16 at ¶ 19.  Between 2001 and 2004, Plaintiff sold its products to United States customers through its online store only.  Dkts. #93, Ex. A at 37:1-12 and #99 at ¶ 2.  Those sales accounted for about 5 percent of its online business.  Dkt. #93, Ex. A at 37:1-12.  In 2004, Plaintiff began selling gluten-free, wheat-free cookies under the trademark "EAT RIGHT" to Whole Food stores in the Pacific Northwest, Northern California, Mid-Atlantic, Southwest and Rocky Mountain regions.  Dkts. #93, Ex. A at 55:10-13 and 73:15-19 and #99 at ¶ 4.

In 2009, pursuant to a license agreement with Nutritional Excellence d/b/a/ Eat Right America, WFMI began promoting a nutritional food-scoring system called ANDI® (Aggregate Nutrient Density Index).  Dkt. #91 at ¶ 3.  ANDI® scores for single-ingredient food items were displayed in single ingredient departments in Whole Foods stores, and were used to provide consumers with nutritional information, specifically the nutrient density of certain single-ingredient foods, such as kale, seeds, nuts and tomatoes.  *See id.* at ¶ 4.  Signage explaining the

ANDI® scores (*e.g.*, "What is an ANDI score?") was displayed throughout Whole Foods stores, including in the produce, bulk, and prepared-foods sections. *See id.* In connection with the ANDI® scores, Defendants were required to display the phrase "Eat Right America" on the in-store signage. *Id.* at ¶ 5. The phrase was part of a larger health-and-wellness program promoted by Eat Right America; thus, Defendants also used the licensed phrase "Eat Right America" for diet programs and related nutritional services. *Id.*

Plaintiff's Managing Director, Rebecca Douglas-Clifford, testified that she first became aware of "EatRight America" being used on books, DVDs and some promotional files in a Whole Foods store in Northern California in February of 2010. Dkts. #93, Ex. A at 131:11-16, Ex. E at 18-23, and #99 at ¶ 7. She has further testified that she believed at the time that the use of the mark "EatRight America" on books and DVDs was by the American Dietetic Association. Dkt. #99 at ¶ 6. She asserts that she arrived at the store in February or March 2010 and went straight to the store's information desk, where she noticed the use of the mark "EatRight America" on books and DVDs. She did not visit any other parts of the store at the time except the upstairs office area where her meeting took place, and she did not notice the trademark "EatRight America" on any food products. *Id.* at ¶¶ 6-7.

Ms. Douglas-Clifford asserts that in or around November 2010, she learned for the first time that a company called Nutritional Excellence, LLC ("Nutritional Excellence") and its principal, Kevin Leville, had adopted the trademark "EatRight America." Dkt. #99 at ¶ 8. She apparently investigated the company and learned that Nutritional Excellence had sought registration of that mark based on a "bona fide intent to use" the mark on a variety of food products. *Id.* Shortly thereafter, Plaintiff's attorney gave notice to Nutritional Excellence that it was infringing on the "EatRight" trademark. *Id.* at ¶ 9. Nutritional Excellence did not

ORDER
PAGE - 6

immediately respond.  *See id.* at ¶ 10.  Ms. Douglas-Clifford states that she did not know at the time that Nutritional Excellence had a contract with Whole Foods giving licensing rights to Whole Foods to use the "EatRight America" mark.  Dkt. #99 at ¶ 10.

Ms. Douglas-Clifford asserts that it was not until February or March 2011, when she was visiting the United States on her annual sales trip, that she visited two Whole Foods stores and saw for the first time that the "EatRight America" mark was being used inside of a Whole Foods store on a wide variety of food products, including bulk foods, prepared foods, and produce.  *Id.* at ¶ 11.

Assuming the truth of Ms. Douglas-Clifford's assertion that she did not actually know that Whole Foods was using the mark on a wide variety of food products until February or March of 2011, her actions during the early 2010-2011 time frame undermine any plausible argument that she could not have discovered with reasonable diligence that Whole Foods was using the mark on food products in its stores.  Moreover, it appears that she allowed or even encouraged such use during the same time period and in subsequent years before filing suit.

For example, on March 3, 2010, Ms. Clifford contacted Whole Foods' attorney and wrote the following:

> On a recent trip to San Francisco, I couldn't help but notice Whole Foods "America's Healthiest Grocery Store" positioning and their alliance with EAT RIGHT AMERICA . . . fantastic to see.
>
> I am not too sure if you are aware but Safeway Inc filed with the US Patent and Trademark Office (USPTO) Trail [sic] and Appeal board against Eat Right America's application to register.  Interestingly Safeway also sent a Petition to Cancel our registration and unbeknown to me at the time even applied for "EAT RIGHT" after see [sic] our products and brand at a trade show in 2006.
>
> From my personal perspective, and after a very draining period protecting our registered brand, I would very much like to see the interests of Whole Foods Market protected and even potentially enhanced.

ORDER
PAGE - 7

> For that reason, please would you consider discussing this email with your contacts at Whole Foods Market with the potential of Whole Foods purchasing our EATRIGHT brand and our priority use of rights which date back to 2001 to fully secure Whole Foods position.

Dkt. #93, Ex. B at ERF001007.  Ms. Douglas-Clifford has testified that she believed that would be an opportunity for Eat Right food products to be aligned with Whole Foods' initiative, and because the Eat Right America campaign would have helped Eat Right sell more of their branded products.  Dkt. #93, Ex. A at 135:16-25 and 139:4-25.

On March 22, 2010, Ms. Douglas-Clifford wrote again to Whole Foods, exclaiming, "Now is the perfect time to order in some EATRIGHT cookies . . . especially with your 'America's Healthiest Grocery Store and Eat Right America' campaigns!!!" Dkt. #93, Ex. B at ERF000991.

On September 23, 2011, Ms. Douglas-Clifford advised Defendants that Plaintiff had negotiated an agreement with Safeway, which "provided protection to 'EATRIGHT America' (Nutritional Excellence) and hence indirectly to Whole Foods Market as the affiliate partner of 'EATRIGHT America.'"  Dkt. #93, Ex. B at ERF001929.  Ms. Douglas-Clifford further stated that she would "continue to work hard in [its] negotiations with Nutritional Excellence to strengthen the position of 'EATRIGHT' for the benefit of Whole Foods Market in the long term." *Id.*  Ms. Douglas-Clifford has testified that, at the time, she wanted to continue to have an amicable relationship with Whole Foods Market.  Dkt. #93, Ex. A at 165:13-166:2.

A few weeks later, on October 14, 2011, Ms. Douglas-Clifford again contacted Defendants' attorney and informed him that Plaintiff had been working hard to come to an amicable resolution with Nutritional Excellence regarding the "EatRight" trademark.  Dkt. #93, Ex. B at 17.  She again reiterated that the agreement Plaintiff had signed with Safeway

ORDER
PAGE - 8

"provided significant protection to the agreement between Nutritional Excellence and Whole Foods Market (signed 28th August 2009) and the subsequent Health Starts Here "program affiliate" arrangements." Dkt. #93, Ex. B at 17. Referencing impending deadlines in the USPTO with respect to Nutritional Excellence, Ms. Douglas-Clifford asked Whole Foods to reconsider a purchase of the EatRight brand. *Id.*

On October 20, 2011, Ms. Douglas-Clifford contacted Defendants' counsel and asked whether Whole Foods had made a decision to purchase the EatRight brand. *Id.* at 16. She also attached a copy of a Notice of Opposition with respect to proceedings in the USPTO against Nutritional Excellence and told counsel that while the Notice mentioned Whole Foods, it could amend it if "a solution" could be found prior to the filing deadline. *Id.* In response, Defendants' counsel stated that he had not heard about the purchase offer, but that his clients did not look too kindly on "threats to drag them into a third-party legal dispute." *Id.* at 15. Ms. Douglas-Clifford wrote back:

> Many thanks and I sincerely apologise if it seems that way but my intention most definitely is/was not to "threaten" but rather to show the facts/details that have been communicated to Nutritional Excellence for over a year. To the contrary, I have fully appreciated and am very greatful [sic] for the help and support of Whole Foods over the years. As you know, my desire has been for some time for Whole Foods to acquire our EATRIGHT brand . . . I sincerely hope that this can be achieved.

*Id.*

On April 4, 2012, Plaintiff demanded that Defendants stop using the phrase "Eat Right America." *See* Dkt. #93, Ex. B at ERF002450-2451. Yet Plaintiff continued to attempt to entice Defendants to purchase its brand. After numerous more offers from Ms. Douglas-Clifford to sell the "EatRight" brand to Whole Foods, and several responses declining the purchase, Defendants' counsel made a request to Plaintiff's counsel that Plaintiff stop

ORDER
PAGE - 9

contacting Defendants' executives, employees and board members.   Dkt. #93, Ex. C at ERF003009.   However, Ms. Clifford-Douglas continued to contact Defendants offering to sell her brand.   *Id.* at ERF003019, 3056, 3063 and 3149.   Whole Foods again declined.   *Id*. at ERF003149.   Plaintiff then initiated the instant lawsuit.

The above-described actions between March of 2010 and December of 2013 demonstrate that Plaintiff knew or, in the exercise of reasonable diligence, should have known that Defendants were using the allegedly infringed trademark in late 2009/early 2010, and that Plaintiff allowed such use to continue until April of 2012, when it finally demanded that Defendants stop using the phrase "Eat Right America."   *See* Dkt. #93, Ex. B at ERF002450-2451.   However, Plaintiff did not initiate the instant lawsuit until December of 2013.   The filing fell outside of the applied statute of limitations, thus the Court presumes that the doctrine of laches is applicable.   *See Jarrow,* 304 F.3d at 838.   Moreover, the Ninth Circuit has applied laches to bar trademark infringement claims where the trademark holder "knowingly allowed the infringing mark to be used without objection for a lengthy period of time."   *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1061 (9th Cir. 1999).   In this case it appears that Plaintiff allowed Defendants to use the alleged infringing mark for three years before demanding they cease, and another year after that before filing suit, primarily in an effort to foster an amicable relationship such that Defendants would purchase Plaintiff's brand. Such delay is not reasonable.

*2.  Prejudice*

Defendants have also demonstrated prejudice.   The Ninth Circuit generally recognizes two forms of prejudice in a laches context: evidentiary and expectations-based.   *Evergreen Safety Council v. RSA Network, Inc.*, 697 F.3d 1221, 1227 (9th Cir. 2012).   "Evidentiary

ORDER
PAGE - 10

prejudice includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded, or who have died." *Id.* (citation omitted). Expectations-based prejudice occurs when a defendant "took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly." *Id.* (citation omitted).

In this case, Defendants have provided evidence that it suffered expectations-based prejudice. During the time period in question, Whole Foods invested a significant amount of time and money in, and heavily promoted, the ANDI® food-scoring system and Eat Right America diet and nutritional programs at its stores. Dkt. #91 at ¶ 9. During that time, Whole Foods opened over 50 stores, all of which (along with its other stores throughout the United States) trained employees on the food-scoring system and Eat Right America programs, and generated, printed, and displayed signage promoting and explaining the scores and programs. *Id.* The salaries of the employees who worked and were involved in the development of the ANDI program during that time totaled $1,595,582.73. Dkt. #92 at ¶ 3. Between 2009 and 2012, Defendants sponsored immersion programs associated with the ANDI program incurring costs in the neighborhood of $2.8 million. *Id.* at ¶ 4. This evidence supports Defendants' claim of laches. *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 956 (9th Cir. 2001).

Under these circumstances, the Court finds that the doctrine of laches is applicable, and Plaintiff is barred from bringing its claims.

## C. **Acquiescence**

The Court next turns to Defendants' argument that Plantiff's claims are stopped by acquiescence. "Estoppel by acquiescence includes the two elements of laches . . . and adds (3) affirmative conduct inducing the belief that [Plaintiff] has abandoned its claim against the alleged infringer, and (4) detrimental reliance by infringer." *E&J Gallo Winery v. Pasatiempos*

ORDER
PAGE - 11

*Gallo, S.A.*, 905 F. Supp. 1403, 1414 (E.D. Cal. 1994). "The distinguishing feature of the acquiescence defense [from a laches defense] is the element of *active* or *explicit* consent to the use of an allegedly infringing mark." *adidas-America, Inc.*, 546 F. Supp. 2d at 1075 (internal quotation marks omitted and emphasis in original).

The Court finds that the same actions by Plaintiff taken between March of 2010 and April of 2012, demonstrate affirmative conduct by Plaintiff inducing Whole Foods to believe that it was welcome, even encouraged, to engage in the Eat Right America campaign. As discussed above, that conduct prejudiced Defendants. Thus, the Court concludes that Defendants relied on Plaintiff's conduct to its detriment. Accordingly, Plaintiff's claims are also barred by the doctrine of acquiescence.

## IV.    CONCLUSION

Having reviewed the parties' cross-motions, the responses in opposition thereto and replies in support thereof, along with the supporting declarations and exhibits and the remainder of the record, the Court hereby FINDS and ORDERS:

1) Defendants' Motion for Summary Judgment (Dkt. #90) is GRANTED.

2) Plaintiff's Cross-Motion for Summary Judgment (Dkt. #96) is DENIED.

3) Plaintiff's Complaint is DISMISSED in its entirety.

4) Defendants' Counterclaim for Breach of Contract (Dkt. #23 at ¶ ¶ 18-23) remains pending before the Court, it having not been addressed or resolved by the parties' cross-motions.

DATED this 14th day of May 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 12