UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EAT RIGHT FOODS, LTD, <br><br> Plaintiff, <br><br> v. <br><br> WHOLE FOODS MARKET, INC., *et al.*, <br><br> Defendants. | CASE NO. C13-2174 RSM <br><br> ORDER VACATING PRIOR ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT, GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the Court on remand from the Ninth Circuit Court of Appeals. Dkts. #127 and #128. This Court previously decided the parties' Cross-Motions for Summary Judgment. Dkts. #90, #96 and #112. Defendants, Whole Foods Market Services, Inc. ("WFMI") and Whole Foods Market Pacific Northwest, Inc. ("WFMPNW"), had argued that they were entitled to summary judgment on all claims on their affirmative defenses of laches and acquiescence. Dkt. #90. Plaintiff, Eat Right Foods, Ltd. ("ERF"), had responded (and cross-moved) that it was entitled to summary judgment in its favor because the evidence did not support either defense in this case. Dkt. #96. This Court disagreed with Plaintiff, granted Defendants' motion for summary judgment, and denied Plaintiff's motion for summary judgment. Dkt. #112. Plaintiff then appealed. On January 29, 2018, the Ninth Circuit Court of Appeals reversed this Court in part, remanding the matter for further consideration of Defendants' affirmative defenses.

ORDER
PAGE - 1

Dkt. #127. The Court does so here, and now VACATES its prior Order on the cross-motions for summary judgment in this case, but again GRANTS Defendants' motion for summary judgment and DENIES Plaintiff's motion for summary judgment for the reasons discussed below.

## II. BACKGROUND

This matter arises from allegations of trademark infringement, false designation of origin and unfair competition. Dkt. #16 at ¶¶ 34-43. Plaintiff alleges that it has used the trademark "EAT RIGHT" since 2001 and the trademark "EATRIGHT" since 2003. *Id.* at ¶ 19. Plaintiff further alleges that from 2004 to 2013, Defendants sold products produced by Plaintiff and sold under the trademark "EATRIGHT." *Id.* at ¶ 30. Plaintiff alleges that Defendants have since sold and marketed products using a trademark confusingly similar to "EATRIGHT" without authorization by Plaintiff, in violation of federal trademark laws and Washington's Consumer Protection Act. *Id.* at ¶¶ 32-43.

Defendants raised an affirmative defense that Plaintiff's claims are barred by the doctrines of laches and acquiescence. Dkt. #23, Affirmative Defenses at ¶ 1. The parties' cross-motions for summary judgment addressed the affirmative defense only. After the Court granted summary judgment in favor of Defendants, determining that the affirmative defenses of laches and acquiescence barred the claims, Plaintiff appealed to the Ninth Circuit Court of Appeals. Dkt. #120.

The Ninth Circuit Court of Appeals issued its Opinion remanding this matter on January 29, 2018. Dkt. #127. It issued its Mandate on February 20, 2018. Dkt. #128. The Court of Appeals affirmed in part, and reversed and remanded in part. The court determined that disputed material facts establishing or defeating the affirmative defenses of laches and acquiescence had

not been resolved, and therefore the Court erred in granting summary judgment. Dkt. #127. Specifically, the Court of Appeals instructed that on remand:

- This Court should reevaluate the evidence in the light most favorable to the non-moving party – *i.e.*, as if Eat Right Foods ("ERF") delayed filing suit because it was trying to settle its claims against Whole Foods. Dkt. #127 at 17. The Court of appeals noted that this Court could still determine that the delay was unreasonable, but the Court must proceed from the premise that ERF's account of why it waited to file suit is true. *Id.*;

- The evidence of expectations-based prejudice this Court considers must be limited to actions Whole Foods took during the period that ERF delayed filing suit. Dkt. #127 at 20; and

- If this Court determines on remand that ERF delayed unreasonably in filing suit and this delay prejudiced Whole Foods, it must consider the extent and reasonableness of Whole Foods' reliance on ERF's affirmative representations before it reaches a finding on acquiescence. Dkt. #127 at 23.

After remand, this Court requested supplemental briefing from the parties, which has since been filed. Dkts. #133-#137. Thus, this matter is now ripe for review.

### III. DISCUSSION

**A. Legal Standard on Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but

"only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)). Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248. A factual dispute is "genuine" if the evidence is such that reasonable persons could disagree about whether the facts claimed by the moving party are true. *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983). [T]he issue of material fact required . . . to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial. *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968).

The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

While the parties do dispute some facts, they agree that the instant issues are appropriate for disposition on their cross-motions. However, cross motions for summary judgment do not warrant the conclusion that one of the motions must be granted. The Court must still determine whether summary judgment for either party is appropriate. *See Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136-1137 (9th Cir. 2001).

ORDER
PAGE - 4

### B. Plaintiff's Motion to Strike

As an initial matter, the Court addresses Plaintiff's motion to strike certain arguments and evidence presented in Defendants' reply brief. Dkt. #137. Specifically, Plaintiff asks the Court to strike data regarding costs in the 2010-2012 time period, arguing that this information was provided for the first time on reply. *Id.* The Court disagrees and declines to strike the material. The information provided on reply simply responds to the arguments Plaintiff raised in its supplemental briefing and clarifies the information raised in Defendants' supplemental brief.

### C. Laches

The Court next addresses Defendants' argument that Plaintiff's claims are barred by the doctrine of laches. "Laches is an equitable time limitation on a party's right to bring suit." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). To prevail on a laches defense, a defendant must prove that the claimant unreasonably delayed in filing suit, and as a result of the delay, the defendant suffered prejudice. *Id.*; *adidas America, Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1069 (D. Or. 2008). In determining whether a party exercised unreasonable delay in filing suit, the Court must assess the length of delay, which is measured from the time the plaintiff knew, or in the exercise of reasonable diligence, should have known about its potential cause of action, and the Court must consider whether the plaintiff's delay was reasonable in light of the time allotted by the analogous state law limitations period. *See Jarrow,* 304 F.3d at 838. "If the plaintiff filed suit within the analogous limitations period, the strong presumption is that laches is inapplicable." *Id.* at 835. "However, if suit is filed outside of the analogous limitations period, courts often have presumed that laches is applicable." *Id.* The Ninth Circuit has found that District Courts may properly grant summary judgment on

the basis of laches. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 831 (9th Cir. 1991) (citation omitted).

In this case, the parties appear to agree that the most closely analogous state-law limitations period for Plaintiff's trademark infringement and false designation claims is Washington's common law tort of trade name infringement, which has a three-year limitations period. Dkts. #90 at 15 (citing RCW 4.16.080(2)) and #96 at 12-14 (analyzing three-year time period); *see also Oldcaste Precast, Inc. v. Granite Precasting & Concrete, Inc.*, 2011 U.S. Dist. LEXIS 20977, *10 (W.D. Wash. Mar. 2, 2011) ("The Lanham Act has no express statute of limitations. The Court therefore looks to the limitations of the closest analogous limitation from state law. The closest analogous cause of action in state law is Washington's common law tort of trade name infringement."); *Ormsby v. Barrett*, 2008 U.S. Dist. LEXIS 20, *6-7 (W.D. Wash. Jan. 2, 2008) (utilizing three year limitations period).

This Court previously determined that Plaintiff had actual or constructive knowledge of the alleged infringement in early 2010. Dkt. #112 at 10. The Ninth Circuit Court of Appeals left that finding intact, stating:

> On this record, it was not an abuse of discretion for the district court to rule that ERF had constructive knowledge of Whole Foods' alleged infringement prior to December 2010. Therefore, **the presumption is that laches applies**. *See Tillamook*, 465 F.3d at 1108. But that presumption may be rebutted if ERF can show that its delay in suing was nonetheless reasonable.

Dkt. #127 at 13 (emphasis added). Thus the Court must turn to whether Plaintiff's delay in filing suit was reasonable.

As the Ninth Circuit further noted:

> To determine whether a delay is reasonable, we "look to the cause of the delay." *Evergreen*, 697 F.3d at 1227. Reasonable justifications for a delay include exhausting remedies through administrative processes, evaluating and preparing complicated claims, and determining "whether the scope of

ORDER
PAGE - 6

proposed infringement will justify the cost of litigation." *Id.* (quoting *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 954 (9th Cir. 2001)). **"[D]elay is impermissible," on the other hand, "when its purpose or effect is to capitalize on the value of the alleged infringer's labor by determining whether the infringing conduct will be profitable."** *Id.*

Dkt. #127 at 14 (emphasis added).

Plaintiff argued on summary judgment that any delay was caused by attempts to settle its claims without taking legal action. The Court of Appeals has directed this Court to accept that characterization as true when examining whether Plaintiff's delay in filing suit was reasonable. Dkt. #127 at 13-14. The Court accepts that Plaintiff was attempting to resolve her potential claims without litigation between 2010 and 2012. That fact effectively rebuts the presumption of laches; therefore, it is now up to Defendants to demonstrate both elements of the laches defense.

The Court first examines whether Plaintiff's delay in filing suit was reasonable given that it was attempting to settle its legal claims without litigation in the years prior to filing suit. This Court previously determined that Plaintiff knew about Whole Foods' Eat Right America campaign in March 2010 and that, by November 2010, Plaintiff believed its brand was being damaged. Dkt. #112 at 6-7. The Ninth Circuit also accepted these facts. Dkt. #127 at 13. Yet, rather than assert claims against Defendants, whether it was through informal settlement discussions or through a formal lawsuit, Plaintiff encouraged Defendants' campaign and marketed its own products by tying them to the campaign. For example, on March 3, 2010 Plaintiff stated that Defendants' "alliance with Eat Right America . . . [is] fantastic to see." Dkt. #90 at 7, ¶ 15. On March 22, 2010, Plaintiff invited a Whole Foods Bakery to purchase more of her cookies as it tied it with the "'Eat Right America' campaign[]". *Id.* at ¶ 17. On November 8, 2010, Plaintiff sent an email to Defendants' licensor, Eat Right America, stating that "[w]e

ORDER
PAGE - 7

have had the pleasure of supplying our EATRIGHT branded products to a mutual customer." *Id.* at ¶ 18. A year later, in September of 2011, Plaintiff sent Defendants an email advising them that Plaintiff had recently signed a settlement agreement with Safeway, which "provided protection to 'EATRIGHT America' (Nutritional Excellence) and hence indirectly to Whole Foods Market as an affiliate partner of 'EATRIGHT America.'" *Id.* at ¶ 19. The email further stated that Plaintiff would "continue to work hard in [its] negotiations with Nutritional Excellence to strengthen the position of 'EATRIGHT' for the benefit of Whole Foods Market in the long term." *Id.*

In October of 2011, Plaintiff reasserted its allegiance to Defendants. When informed by Defendants' patent counsel that Defendants did not appreciate being threatened with being dragged into third party litigation, Plaintiff responded:

> Many thanks and I sincerely apologize if it seems that way but my intention most definitely was/is not to "threaten" but rather to show the facts/details that have been communicated to [the third party] for over a year. To the contrary, I have fully appreciated and am very greatful [sic] for the help and support of Whole Foods over the years . . . .

Dkt. #93, Ex. B at 15. In addition, between 2010 and 2012, Plaintiff sends dozens of emails to Whole Foods' bakeries, urging their stores to sell Plaintiff's products while the Eat Right America campaign takes place. *See*, *e.g.*, Dkt. #93, Ex. B at 8 and Ex. C at 7.

On June 17, 2012, Plaintiff emailed a "Brand Opportunity" document to a third party, acknowledging that "[t]he brand has benefited [sic] inadvertently from the huge investment made by Whole Foods Market in the marketing of 'EATRIGHT' on food products." *Id.*, Ex. B at 26.

Ultimately, on April 4, 2012, Plaintiff sent a cease-and-desist letter to Defendants. Dkt. #93, Ex. B at 21. Notably, the letter did not include a demand for monetary relief or an accounting. *Id.* Instead, the letter asked Defendants to stop using the "Eat Right America"

ORDER
PAGE - 8

phrase, but stated that Plaintiff would "consider any reasonable schedule proposed by [Whole Foods] for phasing out and ceasing its use." Dkt. #93, Ex. B at 21-22. Defendants agreed to cease using "Eat Right America." *Id.*, Ex. B at 23. Plaintiff responded that it "appreciate[d]" Whole Foods' agreement, and asked that it take action within 30 days to stop using the phrase, and that it be removed from all stores by the end of the year. *Id.* The Court notes that it was almost two months after that date, that Plaintiff sent its "Brand Opportunity" document to a third party acknowledging its benefit from the Eat Right Campaign. *Id.*, Ex. B at 26.

Plaintiff then waited another 20 months to bring its lawsuit. During that time, Plaintiff continued to market its products to third parties, specifically noting that the brand had benefitted through distribution in Whole Foods markets. *See*, *e.g.*, Dkt. #93, Ex. C at 11-12. Further, Plaintiff displayed the same claim of benefit on its website. Dkt. #93, Ex. D.

While the Court certainly recognizes that Plaintiff sought to avoid litigation by offering to sell its brand to Defendants during the same timeframe, the communication from Plaintiff also clearly demonstrates a desire to capitalize on Defendants' efforts in its Eat Right America campaign. As a result, the delay in filing suit had the effect of capitalizing on the value of Defendants' labor by determining whether the infringing conduct would be profitable. Indeed, Plaintiff's representative testified that she believed Defendants' investment in the Eat Right America campaign would be beneficial to Plaintiff and help it sell more products. Dkt. #93, Ex. A at 32-33. Thus, the Court finds Plaintiff's delay to be unreasonable. *Evergreen Safety Council v. RSA Network, Inc.*, 697 F.3d 1221, 1227 (9th Cir. 2012) (citation omitted).

In addition, Plaintiff's one-sided attempts to settle any claims by selling its brand to Defendants, does not justify any delay. *See A.C. Aukerman Co. v. Miller Formless Co.*, 693 F.2d 697, 700 (7th Cir. 1982) ("For such tolling the negotiations must ordinarily be continuous and

bilaterally progressing, with a fair chance of success, so as to justify significant delays."). While Plaintiff asserts that all parties were involved in negotiations, and that they were not one-sided, the record does not support that assertion.

Importantly, it was not until April 2012 that Plaintiff issued a formal cease and desist letter to Defendants. Dkt. #93, Ex. B at 21. As described above, it was not until early in 2012 that Plaintiff asserted legal claims against Defendants. *See* Dkt. #98 at ¶¶ 13-18. Prior to that time, Plaintiff had encouraged the use of the Eat Right America campaign. Upon receiving the letter in April 2012, Defendants agreed to stop the campaign. Dkt. #98, Ex. K. Defense counsel further noted that he hoped this addressed Plaintiff's concerns and brought the matter to an end. *Id.* Plaintiff acknowledged Defendants' agreement, thanked defense counsel, and clarified that it did not believe Defendants ever had an effective license in the Eat Right America mark, and then proposed a schedule for phasing out the campaign in all stores. Dkt. #98, Ex. L.

With that context, Plaintiff asserts that Defendants were actively involved in negotiations to sell Plaintiff's EatRight brand as a settlement of the issues noted in its cease and desist letter between 2012 and 2013. Dkt. #134 at 11. It is true that discussions continued throughout the following months regarding the agreement to stop using the Eat Right America mark in Defendants' stores. Dkt. #98 at ¶¶ 19-29 and Exs. I-O thereto. There also appeared to be some discussion of the purchase of the EatRight brand to resolve any remaining legal claims. *Id.* However, on October 9, 2012, Defendants explicitly informed Plaintiff it was not interested in acquiring the EatRight brand. Dkt. #98, Ex. P. Again, on February 25, 2013, Defendants informed Plaintiff it had no interest in purchasing the brand, and requested that Plaintiff's representative stop contacting their employees with her invitation to buy the brand. Dkt. #98, Ex. W.

In 2012, Plaintiff's representative was also speaking directly to Defendants' representatives about purchasing the brand. *See* Dkt. #99. In November of 2012, Plaintiff proposed an acquisition of the EatRight brand, asserting that Defendants would be the "most beneficial acquirer" of the brand, with no mention of any legal claims or settlement thereof. *Id.*, Ex. P at 13. Indeed, at the same time, Plaintiff's representative also assured Defendants that she had taken action to "protect" Defendants with respect to the EatRight trademark, thus undermining any assertion of legal claims against Defendants. *Id.*, Ex. P at 11. Still, in December of 2012, Defendants informed Plaintiff directly that it had no desire to purchase the EatRight brand. Dkt. #99, Ex. P at 4-6. Plaintiff's representative recognized Defendants' decision in February 2013, but still did not file any lawsuit.

Instead, apparently distressed and "inconsolable" that Defendants had declined to buy the EatRight brand, Plaintiff asked for money damages from Defendants in May of 2013. Dkt. #99, Exs. N at 3 and R. Plaintiff then attempted to engage in settlement discussions with representatives of Defendants rather than with Defendants' counsel. *Id.*, Exs. S, T, U and V. Those requests appear to have gone largely unanswered. *Id.* Contrary to Plaintiff's assertions, those communications do not demonstrate a "reengage[ment]" in settlement talks between the parties. Rather, they demonstrate ongoing, one-sided communication between a direct representatives of the companies after negotiations between counsel did not result specifically in a purchase of the EatRight brand. Likewise, appeals directly to counsel went nowhere. *Id.*, Exs. W and X. Thus, it appears from this record that there was an invitation to enter into negotiations which was never accepted, and Plaintiff has not submitted evidence sufficient to create a dispute of material fact on this issue. As a result, the Court finds that the delay in filing suit until December 2013 was not reasonable. *See, e.g.*, *A.C. Aukerman Co. v. Miller Formless Co., Inc.*,

693 F.2d 697, 700 (7th Cir. 1982) ("For such tolling the negotiations must ordinarily be continuous and bilaterally progressing, with a fair chance of success, so as to justify significant delays."); *In re Katz Interactive Call Processing Patent Litig.*, 883 F. Supp.2d 935, 962 (C.D. Cal. 2010) (finding a question of fact as to reasonable delay when the defendant failed to present evidence showing that its negotiations with the plaintiff failed to meet the *Aukerman* standard); *MGA, Inc. v. Centri–Spray Corp.*, 639 F. Supp. 1238, 1243 (E.D. Mich. 1986) (finding that where defendant had declined plaintiff's invitation to negotiate, delay was unreasonable); *Charvet S.A. v. Dominique France, Inc.*, 568 F. Supp. 470, 475 (S.D.N.Y. 1983) ("It is one thing to make allowance for delay due to bona fide efforts to resolve a controversy. But it is fatuous to suggest that year in and year out desultory conversations, some occurring during chance meetings, which achieve no result and with each party adhering to its position, excuses delay.").

Turning now to whether Defendants suffered prejudice as a result of the unreasonable delay, the Court determines that they did. As the Ninth Circuit Court of Appeals explained:

> Two types of prejudice can give rise to laches: expectations-based prejudice and evidentiary prejudice.
>
> . . .
>
> Expectations-based prejudice exists where "a defendant 'took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly.'" *Evergreen*, 697 F.3d at 1227 (quoting *Danjaq*, 263 F.3d at 955). A defendant can establish prejudice by demonstrating that during the plaintiff's delay, "it invested money to expand its business or entered into business transactions based on [its] presumed rights" in a disputed mark. *Miller*, 454 F.3d at 999. The defendant "may also prove prejudice if as a result of entering into such business transactions . . . it may incur liability for damages." *Id.* at 1000; *see also Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1347 (9th Cir. 1984). Establishing undue prejudice requires that the defendant show "at least some reliance on the absence of a lawsuit." *Seller Agency*, 621 F.3d at 989.
>
> . . .

ORDER
PAGE - 12

> On remand, the evidence of expectations-based prejudice it considers must be limited to actions Whole Foods took during the period that ERF delayed filing suit.

Dkt. #127 at 18-20.

In this case, Defendants have provided evidence that it suffered expectations-based prejudice. During the time period in question, between early 2010 and 2012 (when Plaintiff demanded that Defendants stop using the Eat Right America mark), Defendants invested a significant amount of time and money in, and heavily promoted, the ANDI® food-scoring system and Eat Right America diet and nutritional programs at its stores. Dkt. #136, Ex. A at ¶¶ 4-13. During that time, Whole Foods opened more than 30 stores, all of which (along with its other stores throughout the United States) trained employees on the food-scoring system and Eat Right America programs, and generated, printed, and displayed signage promoting and explaining the scores and programs. *Id.* During the relevant time period, sales including bulk and produce items increased by over $1 billion. *Id.* at ¶¶ 7 and 8. The salaries of the employees who worked and were involved in the development of the ANDI program during that time totaled in excess of $1 million. *Id.* at ¶¶ 9-11. Between 2011 and the spring of 2012, Defendants sponsored immersion programs associated with the ANDI program incurring costs in excess of $1 million. *Id.* at ¶¶ 12 and 13. This evidence supports Defendants' claim of laches. *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 956 (9th Cir. 2001).

Moreover, as described above, Plaintiff encouraged the Eat Right America program during that same time period, acknowledging that its brand had benefited from the program, and assuring Defendants that it had taken action to protect Defendants' use of the mark. Under these circumstances, the Court finds that the doctrine of laches is applicable, and Plaintiff is barred from bringing its claims.

**D. Acquiescence**

The Court next turns to Defendants' argument that Plaintiff's claims are stopped by acquiescence. "Estoppel by acquiescence includes the two elements of laches . . . and adds (3) affirmative conduct inducing the belief that [Plaintiff] has abandoned its claim against the alleged infringer, and (4) detrimental reliance by infringer." *E&J Gallo Winery v. Pasatiempos Gallo, S.A.*, 905 F. Supp. 1403, 1414 (E.D. Cal. 1994). "The distinguishing feature of the acquiescence defense [from a laches defense] is the element of *active* or *explicit* consent to the use of an allegedly infringing mark." *adidas-America, Inc.*, 546 F. Supp. 2d at 1075 (internal quotation marks omitted and emphasis in original).

On remand, the Court of Appeals instructed:

> Reliance is a separate but necessary component of the prejudice analysis, and the district court must determine whether the defendant relied on the plaintiff's active representations, to what extent it relied on those representations, and whether that reliance was reasonable. *See id.* That analysis is missing here. Therefore, we vacate the district court's acquiescence finding and remand for further proceedings. If the district court determines on remand that ERF delayed unreasonably in filing suit and this delay prejudiced Whole Foods, it must consider the extent and reasonableness of Whole Foods' reliance on ERF's affirmative representations before it reaches a finding on acquiescence.

Dkt. #127 at 22-23.

The Court finds that the same actions by Plaintiff taken between March of 2010 and April of 2012, demonstrate affirmative conduct by Plaintiff inducing Whole Foods to believe that it was welcome, even encouraged, to engage in the Eat Right America campaign. The conduct by Plaintiff was extensive over the time period in question. For example, in March 2010, Plaintiff sent emails to Whole Foods stating that its "alliance with Eat Right America" was "fantastic to see," specifically highlighting the Eat Right America "campaign[]," and tying its products directly to the campaign. *See* Dkt. #90 at ¶ ¶ 15 and 17. In 2011, Plaintiff informed Defendants

that it would "work hard in [its] negotiations with [Whole Foods' licensor] to strengthen the position of 'EATRIGHT' for the benefit of Whole Foods Market in the long term." *See id.* at ¶ 19. Plaintiff also informed Defendants' trademark counsel it "fully appreciated and [is] very greatful [sic] for the help and support of Whole Foods over the years." *See id.* at ¶ 22. Throughout that same period, Plaintiff continued selling its products to Defendants and touted the benefits of the campaign to third parties. *See id.* at ¶ ¶ 3, 24 and 30. These representation were made with respect to the campaign as a whole.

Likewise, Defendants reasonably relied on those representations. As discussed above, Defendants continued using the phrase "Eat Right America" and promoting the Eat Right America campaign at stores throughout the United States, including its new stores, after receiving Plaintiff's affirmative representations in 2010, 2011, and 2012. Dkts. #90 at ¶ ¶ 9-12 and 37 and #136, Ex. A. Given Plaintiff's own words, such as "fantastic to see," and the continued efforts to sell its products to Defendants by tying them to the campaign, it was reasonable for Defendants to believe that Plaintiff supported its Eat Right America campaign and wanted Defendants to continue using "Eat Right America." *See Seller Agency Council, Inc. v. Kennedy Center for Real Estate Educ., Inc.*, 621 F.3d 981, 990 (9th Cir. 2010) ("When inquiring into the reasonableness of reliance, a district court must examine both the content of the affirmative act and the context in which that act was performed."); *Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n*, 311 F. Supp. 2d 1023, 1037 (D. Oregon 2004), *aff'd,* 465 F.3d 1102 (9th Cir. 2006) (granting summary judgment to defendant where parties' "prior business dealings . . . gave rise to [plaintiff's] 'impliedly consenting' to [defendant's] use [of its mark]."). Thus, the Court concludes that Defendants relied on Plaintiff's conduct to its detriment. Accordingly, Plaintiff's claims are also barred by the doctrine of acquiescence.

ORDER
PAGE - 15

## IV. CONCLUSION

Having reviewed the parties' cross-motions, the responses in opposition thereto and replies in support thereof, along with the supporting declarations and exhibits and the remainder of the record, the Court hereby FINDS and ORDERS:

1) Defendants' Motion for Summary Judgment (Dkt. #90) is GRANTED.

2) Plaintiff's Cross-Motion for Summary Judgment (Dkt. #96) is DENIED.

3) This matter is now CLOSED.

DATED this 25th day of May, 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE